**SPECIALTY RETAILERS, INC., Plaintiff**

v.

**MAIN STREET NA PARKADE, LLC and Label Shopper Corporate Stores, LLC, Defendants.**

**Civil Action No. 09–12134–KPN.**

United States District Court, D. Massachusetts.

Aug. 17, 2011.

Jason A. Manekas, Bernkopf Goodman LLP, Boston, MA, for Plaintiff.

Dennis M. LaRochelle, Cain, Hibbard, & Myers, PC, Great Barrington, MA, for Defendants.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S MOTION FOR COSTS AND FEES (Document No. 51)*

NEIMAN, United States Magistrate Judge.

Pursuant to paragraph 24.7 of the lease agreement (the "Lease") between Main Street, NA Parkade, LLC ("Defendant") and Specialty Retailers, Inc. ("Plaintiff"), Defendant has moved post-trial for attorney's fees and court costs. Plaintiff has opposed the motion on a number of grounds. For the following reasons, the court will allow the motion in part.

### I. BACKGROUND

In light of the parties' familiarity with the matter, only an abbreviated background is provided. In 2009, Plaintiff commenced this action alleging that Defendant breached an exclusive use clause in the Lease by allowing another retail store, Label Shopper Corporate Stores, LLC ("Label Shopper"), to operate in the same shopping center as Plaintiff. Plaintiff also claimed that Defendant violated Mass. Gen. L. ch. 93A. Defendant answered these claims and raised waiver as an affirmative defense. In essence, Defendant asserted that Plaintiff waived its right to claim a breach when it waited one and one-half years from the time Label Shopper began operating its business in the shopping center before voicing any objection and, in the interim, even renegotiated the Lease.

The case proceeded to trial in March of 2011. The parties agreed that the jury's factual findings would determine the issues of breach of contract and waiver and that Plaintiff's chapter 93A claim would be reserved for the court. The jury found that Plaintiff had proven by a preponderance of the evidence that Label Shopper was a "so-called 'off-price' retail store," which meant that Defendant had violated the exclusive use clause in the Lease. The jury, however, did not hold Defendant liable for this violation because it found as well that Defendant had proven by a preponderance of the evidence that Plaintiff had waived its right to recover for any such breach. The court itself issued judgment in Defendant's favor on Plaintiff's chapter 93A claim.

In light of its success, Defendant asserts that it fully prevailed in the action and, pursuant to Paragraph 24.7 of the Lease, has moved for attorney's fees and costs. Paragraph 24.7 provides as follows:

> In the event of a dispute hereunder and either party institutes an action or proceeding against the other, the prevailing party in such action or proceeding shall recover reasonable attorneys' fees and court costs from the other.

(The Lease, Ex. A attached to Complaint.) Specifically, Plaintiff seeks fees ($92,403.50) and costs ($105,150.43) totaling $197,553.93. In addition, Defendant seeks $9,800.25 in fees for successfully opposing Plaintiff's motion for judgment as a matter of law or for a new trial and, as well, for its current motion.

In opposition to Defendant's motion, Plaintiff argues that no fees or costs ought to be awarded because Defendant failed to request such fees and costs in its pleadings. Plaintiff further argues that, if the court is inclined to award fees and costs, the requested amounts, for a number of reasons, should be reduced. The court will address Plaintiff's arguments *seriatim*.

## II. Defendant's Failure to Plead its Request for Attorney's Fees

■ As an initial matter, Plaintiff asserts that attorney's fees are "special damages" which, pursuant to Rule 9(g), had to be "specifically stated" in Defendant's pleadings. Since they were not so pled, Plaintiff argues, Defendant is not entitled to such fees.

Rule 9(g), however, does not define the term "special damages." Moreover, the First Circuit, has rejected the argument that attorney's fees sought by a prevailing party are special damages within the meaning of Rule 9(g). *See Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 25–26 (1st Cir. 2004); *but see Maidmore Realty Co. v. Maidmore Realty Co.*, 474 F.2d 840, 843 (3d Cir.1973) (stating that attorney's fees are special damages that must be specifically pled). Instead, in *Flynn,* the First Circuit applied Rule 54(d)(2)(A)—which provides that "a claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages"—and held that attorney's fees do not typically have to be pled. *Flynn,* 377 F.3d at 25–26.

The First Circuit's conclusion, of course, is controlling and, in the court's view, correct for the reasons set forth below. Accordingly, despite Plaintiff's arguments to the contrary, Defendant, given the particulars of this matter, was not required to plead attorney's fees before requesting those fees in its post-trial motion.[1]

■ To be sure, Plaintiff attempts to distinguish *Flynn* on several grounds. First, Plaintiff argues that *Flynn* does not control whether attorney's fees must be pled pursuant to Rule 9(g) because it involved the application of California not Massachusetts law. That argument is unpersuasive. Although, in diversity cases, "the law of the state in which the district court sits determines whether a party is entitled to attorney fees . . . the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani,* 488 F.3d 1057, 1059 (9th Cir.2007). The fact that the First Circuit in *Flynn* looked to California law to determine whether attorney's fees had to be separately proven at trial, therefore, had no bearing on its conclusion that, as a matter of federal procedure, attorney's fees did not need to be specifically pled pursuant to Rule 9(g). Thus, the First Circuit's holding applies with equal force to the case at hand.[2]

The court also finds unpersuasive Plaintiff's argument—which relies on a ruling out of the Southern District of Georgia—that the First Circuit's decision in *Flynn* is "unconvincing" and "likely the product of poor lawyering rather than an informed decision by the circuit court." *Perry v. Serenity Behavioral Health Systems,* No. CV106–172, 2009 WL 1259367, at *2 n. 4 (S.D.Ga. May 6, 2009). Disagreeing with *Flynn's* rejection of the argument that attorney's fees must be pled under Rule 9(g), the court in *Perry* maintained that the

---

1. Like Rule 9(g), Rule 54(c) does not expressly address attorney's fees: it simply provides that, except for default judgments, every "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Thus, some courts, when applying Rule 54(c), have also determined that attorney's fees do not have to pled. *See, e.g., Capital Asset Research Corp. v. Finnegan,* 216 F.3d 1268, 1270–73 (11th Cir.2000).

2. Although not raised by either party here, the court notes that it is not aware of any authority indicating that, under Massachusetts law, attorney's fees sought pursuant to a prevailing party provision in a contract, as is the case here, must be proven as a separate element of damages. Thus, in the court's view, Defendant's attorney's fees claim falls within the purview of Rule 54(d)(2).

First Circuit was "apparently unaware that at least five other circuit courts have already accepted this exact argument." *Id.*

As indicated, this court is bound by *Flynn* however much Plaintiff or other courts may disagree with it. *See Old Colony Trust Co. v. United States,* 300 F.Supp. 1032, 1035 (D.Mass.1969) ("a district court in this circuit is bound by a prior ruling of the Court of Appeals ... until that ruling is either vacated by a subsequent decision of the Court of Appeals or rendered non-viable by a ruling of the Supreme Court."). As importantly, the First Circuit's refusal in *Flynn* to categorically require that requests for attorney's fees be pled before being raised by motion is well supported by several other circuits.

The Ninth Circuit's decision in *Riordan v. State Farm Mut. Auto. Ins. Co.,* 589 F.3d 999 (9th Cir.2009), is particularly illustrative. There, the court concluded that a plaintiff's failure to raise in his complaint a claim for attorney's fees pursuant to an insurance agreement did not bar his subsequent motion for attorney's fees pursuant to Rule 54(d)(2). The court explained that subparagraph (d)(2) "lays out a general rule that a claim for attorney fees must be made by motion, with the exception that when the substantive law requires those fees to be proved at trial as an element of damages." *Id.* at 1005. Noting that the substantive law in the case contained no such requirement, the court found that the plaintiff properly raised his claim by motion. The Ninth Circuit also rejected an argument, proffered by Plaintiff here as well, that the defendant should have included its claim for attorney's fees both in its pleading and again by motion. Relying on the rule's mandatory language that "claims for attorney's fees *must be made by motion,*" the court explained that "pleadings and motions are distinct, and there is no requirement that the fees claim

be first raised in the [pleadings], then again by motion." *Id.* at 1005–06 (emphasis added). The court concluded that, pursuant to Rule 54(d)(2), "it is proper to raise a claim for attorney's fees by motion, and not in the pleadings" and affirmed the trial court's fee award. *Id.* at 1005.

A similar approach has been taken by other circuits. *See United Indus., Inc. v. Simon–Hartley, Ltd.,* 91 F.3d 762, 764–65, 765 n. 4 (5th Cir.1996) (despite having, on prior occasions, "intimated" that attorney's fees are items of special damage that must be specifically pled, the Fifth Circuit concluded that "under certain circumstances ... Rule 54(c) allows the district court to consider the fees issue even in the absence of a specific pleading," such as where the parties "had an explicit contract provision that the prevailing party would be entitled to fees in the event of litigation."); *Capital Asset Research Corp. v. Finnegan,* 216 F.3d 1268, 1272–73 (11th Cir.2000) (bypassing the question of whether attorney's fees must be pled pursuant to Rule 9(g) and concluding that the fee award was proper under Rule 54(c) because "the contract was in evidence and clearly provided that the prevailing party could recover attorneys' fees, that plaintiff's own application for attorneys' fees had specifically focused attention on the attorneys' fees clause, and [ ] '[o]nly the identity of the prevailing party had to be established before that party's right to this form of relief became manifest.'").

Granted, the district court in *Perry,* on which Plaintiff relies, cites decisions from yet other circuits which have determined that attorney's fees are special damages which must be specifically stated in the pleadings pursuant to Rule 9(g). *See Maidmore Realty Co.,* 474 F.2d at 843; *In re Am. Cas. Co.,* 851 F.2d 794, 802 (6th Cir.1988); *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.,* 705 F.2d 712, 716 (4th Cir.

1983); *W. Cas. & Sur. Co. v. Sw. Bell Tel. Co.*, 396 F.2d 351, 356 (8th Cir.1968). This court, however, is not convinced that these decisions stand for the principle, posited by the court in *Perry*, that attorney's fees must always be pled. *See, e.g., Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922–23 (8th Cir.2004) ("shifting the attorney fees of a successful plaintiff in a shareholder derivative suit to the corporation is not a 'special damage' within the meaning of Rule 9(g)"); *Thorstenn v. Barnard*, 883 F.2d 217, 218 (3d Cir.1989) (allowing recovery of attorney's fees under Rule 54(c) despite party's failure to plead them). Moreover, at least one court in the Fourth Circuit has questioned the continuing validity of *Atl. Purchasers*, noting that the Circuit Court had "not ruled on [the] issue since the amendment of Rule 54 in 1993." *Belk, Inc. v. Meyer Corp., U.S.*, No. 3:07–CV1 68–DSC, 2010 WL 3474918, at *6 (W.D.N.C. Aug. 31, 2010).

■ Further, as described, the Fifth Circuit's decision in *United Indus., Inc.*, which the court in *Perry* also cited, did *not* categorically require that requests for attorney's fees be pled; rather, it expressly acknowledged that in certain circumstances attorney's fees claims need not be included in the pleadings, such as when a contract provides for those fees for the prevailing party. That is the situation here as well. Thus, whether applying Rule 9(g), 54(c) or 54(d)(2), courts have generally been reluctant to allow a party's failure to plead attorney's fees to categorically bar it from later raising the claim by motion. *See also Klarman v. Santini*, 503 F.2d 29, 36 (2d Cir.1974) (finding that a claim for attorney's fees was governed by Rule 54(c) and concluding that a "failure to specifically request attorney's fees and expenses … does not in itself prevent their recovery.").

The reasons for this approach may vary somewhat. But, as one court astutely observed, in many of these cases "notice, not pleading, is the critical inquiry." *Southern Indus. of Clover, Ltd. v. Zenev Textiles S.A.*, No. 02 Civ. 8022(HB), 2004 WL 1444856, at *2 (S.D.N.Y. June 25, 2004); *see also Riordan*, 589 F.3d at 1006 (affirming the lower court's award of attorney's fees in part because defendant could not claim that it was prejudiced by lack of notice "after availing itself of the full protections available under Rule 54(d)(2)."); *United Indus., Inc.*, 91 F.3d at 765 (concluding that there is no requirement to plead an attorney's fees claim when a party "put[s] its adversaries on notice that attorney's fees are at issue in a timely fashion"); *Capital Asset Research Corp.*, 216 F.3d at 1272–73 (affirming fee award in the absence of prejudice to the plaintiff because defendant's claim for attorney's fees was pursuant to a "prevailing party" provision in a contract). This court agrees that notice is a critical element of the inquiry.

Here, as described, there is no question that Plaintiff had more than adequate notice that Defendant could request attorney's fees if it prevailed in any action arising out of the Lease. As in *Capital Asset Research Corp.*, the Lease, which was in evidence, clearly provided that the prevailing party could recover attorney's fees. Plaintiff specifically brought the prevailing party provision to the court's attention when it included a request for such fees in its complaint. Accordingly, only the identity of the prevailing party had to be established before that party's right to fees became manifest. The court therefore has little alternative but to conclude that Defendant, as the prevailing party, is entitled to its reasonable fees.

### III. REASONABLENESS OF FEES

■ Anticipating that the court might find that Defendant was not required to specifically plead its request for attorney's

fees, Plaintiff argues that Defendant's requested fee amount should nonetheless be reduced because Defendant did not "fully prevail" in the action and should be awarded only those fees expended on claims in which it prevailed. In response, Defendant asserts that it did fully prevail, in that judgment was entered for it on each of Plaintiff's claims, and that it should be awarded all fees requested, even for certain interim matters on which it did not succeed. For its part, the court finds that Defendant did "prevail" in the litigation, as that term is used in the Lease, but it will nonetheless reduce the fee requested by the time Defendant expended on its unsuccessful motions to dismiss, its counsel's resolution of potential conflicts of interest between his two clients, and certain efforts expended by counsel on behalf of Label Shopper.

■ To be a prevailing party, the First Circuit has explained, a party "need not prevail on every claim and obtain all relief sought." *Richardson v. Miller*, 279 F.3d 1, 3 (1st Cir.2002); *see also Sheehy v. Town of Plymouth*, No. Civ. A. 95–12425–RBC, 2001 WL 92386, at *2 (D.Mass. Jan. 18, 2001) ("a party who is only partially successful can be deemed a prevailing party and as such a claimant who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims.") (internal quotation marks omitted). Indeed, in cases where the defendant has prevailed on only certain claims,

> the question becomes whether the claims on which they lost in the same suit were *unrelated* to the successful ones (in which event no fees may be awarded for work on the unsuccessful claims) or whether, instead, the losing claims including "a common core of facts," or were "based on related legal theories," linking them to the successful claim. In the latter event, the award

may include compensation for legal work performed on the unsuccessful claims. *Garrity v. Sununu*, 752 F.2d 727, 734 (1st Cir.1984) (emphasis in original).

Here, the parties' arguments at trial represent two sides of the same coin. Plaintiff alleged that Defendant rented space in a shopping center to another tenant—Label Shopper—which, according to Plaintiff, operated an "off-price retail store" and used the premises for a similar business purpose in violation of the Lease. In response to these allegations of breach, Defendant raised waiver as an affirmative defense, arguing that Plaintiff forfeited its right to claim a breach when it waited one and one-half years from the time Label Shopper began its operation before voicing any objection. In the court's view, these countervailing assertions are sufficiently related that an any attempt to "try to separate out the legal services rendered with respect to these overlapping claims would be an exercise in futility." *Id.* at 735.

The court similarly finds no reason to discount Defendant's fees for time spent preparing its expert witness. Unlike the expert fee itself, which for the reasons discussed below will not be remunerated, Defendant is entitled to its attorney's fees for the time expended preparing that witness. Plaintiff's arguments notwithstanding, the court finds that Defendant reasonably expected its expert witness to provide useful testimony regarding whether Label Shopper's use of its premises was similar to Plaintiff's business.

The court also declines to reduce Defendant's requested fee for researching and preparing motions to compel Plaintiff to comply with discovery requests. Although Plaintiff asserts that such expenses could have been avoided by merely requesting the documents, the court will not second-guess Defendant's decision to research dis-

covery issues in the event that Plaintiff refused to comply, especially given the fact that Defendant's motion was partially successful.

The court, however, finds that Defendant is not entitled to fees for legal services expended on its unsuccessful motion to dismiss. As the First Circuit has explained, a prevailing party "is only entitled to recover fees for time productively spent." *United States v. One Star Class Sloop Sailboat Built in 1930 with Hull Number 721, Named "Flash II"*, 546 F.3d 26, 39 (1st Cir.2008). "Consequently, time invested in issues that are litigated profligately, unnecessarily, or without benefit to the prevailing party may be disallowed." *Id.*

Moreover, the court finds no merit to Defendant's arguments that, because its motion to dismiss was not found to be frivolous and that its victory at trial vindicated the position taken in the motion, it is entitled to fees expended thereon. First, the mere fact that a failing argument in a motion to dismiss is not frivolous does not render it an appropriate expenditure of time. *See Rolland v. Cellucci*, 151 F.Supp.2d 145, 154 (D.Mass.2001) ("An unsuccessful motion cannot be compensated. This approach is justified by ... the Supreme Court [which has found that the] 'congressional intent to limit awards to prevailing parties requires that ... unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.' ") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Second, the court sees no reason why Defendant's success at trial, after evidence had been gathered and presented to a jury, entitles it to fees for its earlier unsuccessful motion to dismiss, or, for that matter, the parallel motion brought on behalf of Label Shopper.

In the end, Plaintiff has accurately identified 24.3 hours totaling $4,620.50 in fees that Defendant expended on these unsuccessful motions (Plaintiff's Opposition to Defendant's Motion for Costs and Fees at 14), and the court has identified an additional 1.55 hours totaling $273.25 (Ex. A attached to Defendant's Motion for Costs and Fees ("Def. Mot.") at 2/5/2010, 4/7/2010, and 4/27/2010). The court will reduce the amount in fees requested accordingly.

Plaintiff also argues that it should not be required to pay for time, amounting to $202.50 in fees, expended by Defendant's counsel researching potential conflicts of interest between his two clients. The court agrees. Counsel's decision to represent both Defendant and Label Shopper arose out of his ethical obligation to ensure that he could zealously represent both. Plaintiff should not have to bear the costs related to that decision.

In addition, the court will deny Defendant's request for fees, which the time sheets indicate were incurred, with regard to Label Shopper as a defendant. In doing so, the court has not adopted Plaintiff's argument that counsel's *entire* fee request should be halved as a result of his dual representation of both Defendant and Label Shopper; it is clear that the vast majority of time would have been expended had Defendant been the sole responding party. Nonetheless, there are a number of instances in which counsel's time was utilized on behalf of Label Shopper alone and the resulting fees were certainly not contemplated by the Lease. In particular, the court finds that Plaintiff should not bear $806.25 in fees for 3.45 hours expended on discovery related exclusively to Label Shopper. (*See* Ex. A attached to Def. Mot. at 12/30/2009, 9/7/2010, 9/8/2010, and 9/9/2010.) In addition, the court finds that a reduction of $987.00 is appropriate for

the 8.4 hours (totaling $1,974.00) in block billing when counsel performed discrete work on behalf of both Defendant and Label Shopper. (*See id.* at 7/21/2010 9/13/2010, and 9/17/2010.)

Finally, the court will award Defendant its request for $9,800.25 for fees incurred successfully opposing Plaintiff's motion for judgment notwithstanding the verdict or for a new trial, as well as fees related to the instant motion.

## IV. COURT COSTS

Finally, Plaintiff argues that the costs Defendant seeks ($105,150.43) should be reduced by the expert fees it claims to have expended ($100,438.74). Plaintiff asserts that the term "court costs" as used in the Lease is unambiguous and does not include expert fees; in essence, Plaintiff maintains that courts have determined that the term "court costs," as used in Rule 54(d), does not include expert fees.

Defendant has no dispute with Plaintiff's Rule 54(d) argument but argues, in response, that the rule is not controlling because the court must determine the ordinary meaning of the term as used in the Lease not in the rule. Moreover, Defendant argues, the term "court costs" used in the Lease must necessarily include expert fees because the provision effectuated the parties' intent to indemnify the prevailing party from harm for having taken, and maintained, a legal position that ultimately proved to be correct.

The interpretation of an unambiguous contract is a question of law for the court, as is the initial determination of whether an ambiguity exists. *Bukuras v. Mueller Group, LLC,* 592 F.3d 255, 261–62 (1st Cir.2010). A contract is not ambiguous, however, "merely because a party to it ... disputes an interpretation that is logically compelled." *Crowe v. Bolduc,* 365 F.3d 86, 97 (1st Cir.2004). Here, the parties agree that the "court costs" provision is unambiguous but argue, somewhat ironi-cally, that the ordinary and plain meaning of the provision compels very different results. For its part, the court finds that the term "court costs" in the Lease does not include expert fees.

While perhaps not controlling of the interpretation of the Lease, the federal rules and related statutory provisions are relevant "to the extent that they reveal the ordinary and plain meaning of the term 'court costs.'" *Amerisource Corp. v. Rx USA Int'l, Inc.,* No. 02–CV–2514 (JMA), 2010 WL 2160017, at *14 n. 17 (E.D.N.Y. May 26, 2010). In this circuit, it is well settled that "allowable costs are specifically set out in 28 U.S.C. § 1920," *Papas v. Hanlon,* 849 F.2d 702, 704 (1st Cir.1988), and that "expert witness fees are not recoverable under 28 U.S.C. § 1920 or Rule 54." *Sheehy,* 2001 WL 92386 at *8. Describing Section 1920's "esemplastic effect," the First Circuit explained that

[i]t fills the void resulting from Rule 54(d)'s failure to define the terms "costs" ... and in that way constrains the district court's power to determine which expense categories constitute taxable costs. In other words, the statute and rule, read together, signify that a district court lacks the ability to assess "costs" under Rule 54(d) above and beyond those that come within the statutory litany.

*In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.,* 994 F.2d 956, 962 (1st Cir.1993). Courts which have expressly considered the issue have, therefore, found that the term "court costs" applies to "a variety of routine items" that are "largely consistent with the taxable costs" enumerated in section 1920, including "filing, photocopying, postage, telephone, travel and meals." *Amerisource Corp.,* 2010 WL 2160017 at *14; *see also Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co., Inc.,* No. 4:04CV00126

ERW, 2005 U.S. Dist. LEXIS 23731, at *18 n. 14 (E.D.Mo. Oct. 14, 2005) (citing *All Pro Maids, Inc. v. Layton,* No. Civ.A. 058–N, 2004 WL 3029869, at *3–4 (Del.Ch. Dec. 27, 2004) (unpublished) (" '[C]ourt costs' construed to have ordinary meaning and to exclude costs not directly related to interactions with court.")). Those courts have also uniformly agreed that "court costs" do not include expert fees.

In *Amerisource Corp.,* for example, the court was called upon to interpret an agreement that contained a provision that awarded "court costs" to parties that prevailed on certain contractual issues. The court concluded that, given the limited scope of taxable costs in section 1920, the unambiguous meaning of "court costs" could not be "reasonably interpreted to encompass expert fees." 2010 WL 2160017 at *14. Similarly, when considering whether the term as used in a state insurance statute included expert fees, the court in *EnergyNorth Natural Gas, Inc. v. Century Indem. Co.* found no support for the position that "the plain and ordinary meaning of the term 'court costs' includes expert witness fees." No. 99–cv–049–JD, 2006 U.S. Dist. LEXIS 34571, at *5–6 (D.N.H. May 26, 2006). Looking to case law defining the term "as [it was] found in private agreements or the laws of other states," the court found that, "where 'costs' has been construed to encompass expert witness fees, the term generally has not appeared in isolation, but preceded by a modifier such as 'all,' which serves to broaden its scope." *Id.* Hence, the court concluded, "expert witness fees … fall outside of the plain and ordinary meaning of 'court costs.' " *Id.* at *7.

Of course, these myriad decisions are not dispositive of the meaning of the term "court costs" as used in the Lease at bar. Nevertheless, the case law provides persuasive authority that, in concert with section 1920, the ordinary meaning of "court costs" does not include expert fees. This is not to suggest, of course, that parties could not choose to contractually agree that a prevailing part may be entitled to expert fees, but, as Defendant points to nothing in the Lease which indicates or implies that the parties intended to alter the plain meaning of the term "court costs," the court will decline to award the $100,438.74 in expert fees requested.

### V. Conclusion

In light of the foregoing, the court will reduce Defendant's total request for attorney's fees of $102,203.75 by $6,889.50: $4,893.75 for the time counsel expended on the unsuccessful motions to dismiss, $202.50 for the time counsel expended on researching and resolving potential conflict issues between its clients, and $1,793.25 for the time counsel expended on issues related exclusively to Label Shopper. The attorney's fees awarded, therefore, is $95,314.25. The court also awards $4,711.69 for costs, which includes all costs requested except the $100,438.74 in expert fees.

IT IS SO ORDERED.